IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

FELICIA PHILLIPS                                                                                    PLAINTIFF

vs.                                        NO: 2:08CV00043 BSM

ARKANSAS DEPARTMENT
OF CORRECTION                                                                               DEFENDANT

## ORDER

Plaintiff Felicia Phillips (Phillips) filed this action alleging that the Arkansas Department of Corrections (ADC) discriminated against her on the basis of her race and in retaliation for filing a previous action when it terminated her on July 31, 2007. The ADC has filed a motion for summary judgment, to which Phillips has responded and the ADC has replied. For the reasons set out below, the ADC's motion is granted.

## I. BACKGROUND

Unless otherwise indicated the following facts are not in dispute. Phillips, who is African-American, was employed by the ADC in March of 2003 and worked as a correctional officer I until April, 2006 when she was promoted to correctional officer II. Around March 25, 2005, Phillips filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) against the ADC. She filed a supplemental EEOC Charge on August 8, 2005. On January 9, 2006, she filed a complaint in federal court against the ADC alleging discrimination based on sex and retaliation. *Phillips v. Arkansas Dep't of Correction*, 2:06cv00009WRW.

In late May, 2007, the ADC's Internal Affairs department was contacted by a

representative from the Governor's Office regarding an allegation of inmate abuse at the East Arkansas Regional Unit (EARU) in Brickeys, Arkansas, where Phillip was employed. According to the Governor's office, the mother of an inmate reported that her son, Michael Butler, had been abused by officers at the EARU.  The ADC's Internal Affairs department also received from the  Assistant Warden of the EARU a letter from inmate Butler detailing the alleged abuse.  Butler's letter is attached as  Ex. 1A to Defendant's Motion for Summary Judgment.

In his letter, Butler reported that on May 17, 2007, he got into an argument with a corrections officer (Officer Teresa Brown-Davis) over the fact that he had not received his medication.  Officer Brown, who is African-American, cursed and made racial slurs when talking with Butler, who is white.   In his letter, Butler stated that Officer Brown referred to him as a "bitch ass white boy" and a "punk bitch white boy."  When Butler responded with his own cursing, Brown threatened to have him "whooped."  Butler responded that if Brown touched him he would "slap her face off."

Butler reported that he was then removed from his cell by a group of officers who placed him in tight restraints and took him first to pre-lockup and then to isolation area number two (ISO 2).  As the officers began to put on gloves, Lieutenant Evans (who is white) said "[a]re you all stupid som [sic] bitches of what??  You can't be ganging up or mobbing him in front of the cameras!"

Butler reported that the officers then took him to another isolation areas (ISO 3) where

he wrote that the following occurred:

> Upon arriving said officers again began to put on their gloves again. A female officer by the name I believe is Phillips I can identify or similar to it asked me why I had threatened one of her officers? I then stated that I don't even realize what I was saying as I've been without my mental health medicines. She said wrong Fucking Answer Bitch cause I'm off my meds too! She then slapped me in the face 2 times.

Butler reported that a male sergeant then held open a shower door and told him to get in, which Butler did, thinking that the sergeant was going to help him. Instead, according to Butler, the officers made him face the back of the shower stall and they began to beat his back and sides, the back of his head, and at one point tried to kick him in his genitals.

Butler stated that with regard to the beating, he was "continually called a white bitch and Bitch ass White Boy." He reported that the female officer was the one entirely responsible for the racial slurs "and she even said she ought to go find my Bitch ass white momma and cut her throat."

Butler reported that he then was beaten for several minutes while other officers who entered ISO 3 laughed and refused to help him. Butler wrote in his letter that there were other inmates in isolation with abuse complaints like his, and that he would be willing to take a lie detector test with regard to anything he had written in the statement.[1]

---

[1] Butler has sued the various officers involved in that incident. *Butler v. Norris*, 2:07CV00128JLH-HLJ . On May 23, 2008, the court adopted the proposed findings of the Magistrate Judge who found after a prejury hearing, that sufficient evidence existed to present Butler's failure to protect and excessive force claims to a jury. The case is still pending.

On May 29, 2007 Internal Affairs investigator Cindy Courington interviewed Butler and gave him a computerized voice stress analysis (CVSA) examination. Courington is licensed to conduct CVSA examinations. Defendant's Ex. 5 to Motion for Summary Judgment, Courington Decl. at ¶ 1. Courington concluded that Butler's examination reflected no deception on his part. An Internal Affairs investigation (Case No. 107-119) was then commenced. Ex. 1 to Defendant's Motion for Summary Judgment, Gibson Decl. ¶3. On June 5, 2007, the Internal Affairs investigation was assigned to IA Investigator Raymond Naylor. Naylor was not licensed to conduct CVSA examinations at the time, but he received assistance from Courington and Ruth Clark, both of whom had been licensed to conduct CVSA examinations since January 2006. Ex. 3 to Defendant's Reply to Plaintiff's Response, Gibson Suppl. Decl. at ¶¶ 2-3.

Over the next five to six weeks, Internal Affairs conducted an extensive investigation, interviewing thirty-three inmates and staff and conducting eighteen CVSA examinations. Regarding the Butler incident, the EARU's security logs corroborated Butler's account that Phillips was present in ISO 3 where the alleged abuse occurred.

During the investigation, Donnie May, another inmate, reported that Phillips had struck him after a verbal altercation. Naylor interviewed another corrections officer, Nat Lewis, who reported that he witnessed Phillips kick an inmate in his side. Also, inmate Rockmon Abdullah reported that Phillips and others had physically assaulted him. Records and accounts from other witnesses also suggested that Phillips had falsified her incident report regarding

the Abdullah event.

Phillips was on FMLA leave from June 12, through June 22, 2007. She was scheduled to return to work on June 25, 2007, but on that date she reported to Pine Buff for an interview with Naylor. She had her attorney fax a letter to Warden Greg Harmon (Harmon) indicating that if a lie detector test was going to be scheduled, the attorney wanted to be present. Harmon responded that a lie detector test would not be given. Phillips was administered a CVSA test on that day, given by Courington. Ex. 4 to Defendant's Reply to Plaintiff's Response to Motion for Summary Judgment, Naylor Supp. Decl. ¶ 4.

On July 31, 2007, Harmon and Major Williams met with Phillips concerning the Internal Affairs investigation. According to the letter of termination from Harmon dated August 9, 2007:

> The investigation dealt with inmate physical and verbal abuse. From the evidence gathered, it revealed that you had participated in physical abuse of inmates on several occasions. Specifically, two incidents of physical abuse that involved inmates Michael Butler . . . and Donny May . . ., that occurred on May 17,2 007. Security logs reflect that you were present when these incidents took place. You were also involved in another incident concerning inmate Abdullah Rockmon [sic] . . ., that occurred on February 5, 2006, whereby you falsified your 005 report.
>
> This was totally against policy and is not the standard that represents the Department of Correction and the East Arkansas Regional Unit.
>
> From my review of this matter, it is evident that your actions were in violation of AD 00-10 sections (1-p) "Violation of published policies," (18-b) "falsification of written/verbal statements/information, and (21-e) "Physical abuse used to punish.
>
> Therefore due to the security and good order of the Unit, I terminated your

employment, effective immediately, for violation of policy and procedure. Ex. 3 to Defendant's Motion for Summary Judgment, Harmon Decl.

Harmon, who is African-American, terminated eight EARU officers, including Phillips, and suspended four EARU officers for 30 days as a result of the investigation. Seven of the eight officers terminated are African-American, as well as all four suspended officers. Phillips's immediate supervisor, Cheryl Evans who is white, was also terminated.

On January 2, 2008, Phillips filed an EEOC charge alleging that she was terminated because of her race and in retaliation for having previously filed an EEOC charge and lawsuit. Phillips received her Notice of Right to Sue from the EEOC on January 20, 2008, and filed this action on April 3, 2008.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "The burden of demonstrating that there are no genuine issues of material fact rests on the moving party." *Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 468 (8th Cir. 2004). To be a genuine issue of fact, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Depositors Ins. Co. v. Wal-Mart Stores, Inc.*, 506 F.3d 1092, 1094 (8th Cir. 2007). To be a material fact, the factual issue must potentially affect the outcome of the suit under governing

law. *Id.*

In considering a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party, giving her the benefit of all reasonable inferences drawn from the record. *Hannoon v. Fawn Eng'g Corp.*, 324 F.3d 1041, 1045-46 (8th Cir. 2003). Once the moving party has demonstrated that there are no genuine issues of material fact in dispute, the non-moving party must present evidence showing that there are "disputed material facts [and] that a reasonable jury could return a verdict in [its] favor." *Gregory v. City of Rogers, Ark.*, 974 F.2d 1006, 1010 (8th Cir.1992). The non-movant must present evidence that is more than "merely colorable" or not significantly probative. *Id.* It may not rest on mere denials or allegations but must set forth specific facts to raise a genuine issue of fact for trial. *Wingate v. Gage County Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

The Eighth Circuit has stated that "[s]ummary judgment should seldom be granted in the context of employment discrimination cases because of their being inherently fact based." *Buboltz v. Residential Advantages, Inc.,* 523 F.3d 864, 871 (8th Cir. 2008). It has, however, also noted that there is no "discrimination case exception" to the application of Rule 56. *Pope v. ESA Servs.*, 406 F.3d 1001, 1006 (8th Cir. 2005).

### III.  DISCUSSION

A.  <u>Race Discrimination Claim</u>

At the summary judgment stage, the issue in a discrimination case is "whether the

plaintiff has sufficient evidence that unlawful discrimination was a motivating factor in the defendant's adverse employment action." *Roberts v. Park Nicollet Health Services*, 528 F.3d 1123, 1127 (8th Cir. 2008) (internal quotation marks and citation omitted). A plaintiff raising a claim of discrimination may survive a motion for summary judgment either by proof of direct evidence of discrimination or by creating an inference of discrimination under the burden-shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973) and then rebutting any proffered nondiscriminatory reason for the employment decision with sufficient evidence of pretext. *King v. Hardesty*, 517 F.3d 1049, 1057 (8th Cir. 2008).

As Phillips has not presented any direct evidence, the court applies the *McDonnell Douglas* framework. "Under the *McDonnell Douglas* framework, a presumption of discrimination is created when the plaintiff meets [her] burden of establishing a prima facie case of discrimination." *Pope*, 406 F. 3d at 1006. Once Phillips establishes her prima facie case, the burden of production shifts to the ADC to show it had a legitimate, nondiscriminatory reason for its action. If the ADC can articulate a legitimate, nondiscriminatory reason, the burden returns to Phillips to prove that the proffered reason is pretextual. *Beaden v. Int'l Paper Co.*, 529 F.3d 828, 831-32 (8th Cir. 2008). While "the burden-shifting framework is merely an analytical construct; the ultimate burden of proving discrimination remains at all times with [plaintiff]." *Montes v. Greater Twin Cities Youth Symphonies*, 540 F.3d 852, 858 (8th Cir. 2008) (internal quotation marks and citations

omitted).

To establish a prima facie case of discrimination, Phillip bears the burden of proving that (1) she is a member of a protected class; (3) that she was meeting the expectations of her employer; (3) that she suffered an adverse employment action; and (4) that similarly situated employees outside her protected class were not treated the same as she was, *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008), or the circumstances surrounding the adverse action give rise to an inference of unlawful discrimination. *Arnold v. Nursing and Rehab. Ctr. at Good Shepherd, LLC*, 471 F. 3d 843, 846 (8th Cir. 2006).

The ADC does not contest the first three elements of the prima facie case. It contends, however, that Phillips cannot establish a prima facie case because she cannot offer evidence to show that she was treated less favorably than similarly situated employees who are not African-American. Phillips counters that she was treated less favorably than several white correctional officers-- Lt. Billy Joe Clark, Sgt. David Maney and Sgt. Mallet--who were accused of and investigated for inmate abuse but were not terminated.

The Eighth Circuit has applied two different tests in determining whether employees are similarly situated. One line of cases sets a "low threshold," requiring that at the prima facie stage a plaintiff need only show that the employees were "involved in or accused of the same or similar conduct and [were] disciplined in different ways." *Wheeler v. Aventis Pharmaceuticals*, 360 F.2d 853, 857 (8th Cir. 2004) (quoting *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1308-09 (8th Cir. 1994)). The other line of cases applies a more rigorous standard

at the prima facie stage and "requires that the other employees be similarly situated in all relevant aspects before the plaintiff can introduce evidence comparing herself to the other employees." *Fields*, 520 F.3d at 859. *Cf. Rodgers v. U.S. Bank, N.A.,* 417 F.3d 845, 851 (8th Cir. 2005) (discussing the two approaches in the circuit and adopting the "low threshold" test).

Phillips has failed to establish that she was similarly situated to the white correctional officers under either test. With regard to Sgt. Maney, Phillips could only state that he was accused of inmate abuse. The ADC contends that Maney and Phillips are not similarly situated. According to the ADC, inmate Farris alleged that Maney and three African-American officers sprayed him with mace and beat him. During the Internal Affairs investigation, however, Farris admitted that he wasn't sure whether Maney hit him, and stated that Maney was justified in spraying him for striking another officer. Based on the investigation into Farris's allegation, Harmon concluded that the officers involved were justified in their actions due to Farris assaulting an officer.

Similarly, Phillips has not presented any evidence in support of her contention that she is similarly situated to Sgt. Mallet or Lt. Billy Joe Clark. It is not sufficient for Phillips to merely allege that Mallet and Clark, who are white, were accused of inmate abuse and not terminated. "Such skeletal allegations, unsupported with specific facts or evidence, are insufficient to create a genuine issue of fact as to preclude granting summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 530 (8th Cir. 2007).

Phillips's argues both that her investigation was more rigorous and extensive than those to which white correctional officers were subjected and that her investigation was inadequate. *See* Plaintiff's brief in response to motion for summary judgment, Doc. No. 28, pp. 6-7. There is no evidence to support either contention. Indeed, as a result of the extensive investigation involving Phillips, the ADC terminated Phillips's immediate supervisor, Cheryl Evans, who is white.

Phillips's unsubstantiated allegations that she was treated less favorably than white correctional officers are not sufficient to meet her burden of proof. She has failed to present any evidence to show how the situations are similar, or any evidence giving rise to an inference of unlawful discrimination. The court finds that ADC is entitled to summary judgment on Phillips's race discrimination claim.

B      Retaliation Claim

To establish a prima facie case of retaliation, Phillips must show that "she engaged in protected conduct, that the employer treated her in a manner that a reasonable employee would have found materially adverse, and that the protected conduct was causally related to the adverse action." *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1147 (8th Cir. 2008). If Phillips establishes a prima facie case, then the ADC must produce evidence of a legitimate, non-retaliatory for its action, and Phillips would then have an opportunity to show that the given reason for the action was a pretext for retaliation. *Id* at 1147-48. "To make out a retaliation claim, the plaintiff must show that the protected conduct was a 'determinative-not

merely motivating-factor' in the employer's adverse employment decision." *Id*. at 1148 (quoting *Carrington v. City of Des Moines, Iowa*, 481 F.3d 1046, 1053 (8th Cir. 2007)).

Phillips filed charges of discrimination with the EEOC on March 25, 2005 and on August 8, 2005. After receipt of her right-to-sue notices, she filed a lawsuit against the ADC on January 9, 2006, alleging race discrimination and retaliation in violation of Title VII and the Arkansas Civil Rights Act. *Phillips v. Arkansas Dep't of Correction*, No. 2:06CV0009WRW. Phillips contends that the ADC terminated her in retaliation for the previous lawsuit.[2]

The ADC concedes that Phillips has met the first two elements of her prima facie case but contends that she has failed to meet the third element; that is she has failed to establish a causal connection between her protected conduct and her termination. The termination occurred well over a year after the filing of the lawsuit.

Here, the time between the protected activity, that is the filing of the lawsuit, and the termination, is not close enough to raise an inference of causation. *Recio v. Creighton Univ.*, 521 F.3d 934, 941 (8th Cir. 2008) (temporal connection of six months not close enough to raise inference of causation). Furthermore, more than a temporal connection is required to present a genuine issue of material fact on retaliation. *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 915 (8th Cir. 2006).

---

[2]On March 26, 2008, United States District Judge William R. Wilson granted the defendants' motion for Summary Judgment, and dismissed Phillips's complaint with prejudice. No. 2:06CV0009, Doc. No. 45.

Phillips's argues that beyond the temporal connection, she has established causation because she was treated differently than everyone else terminated. She claims that other officers were interviewed several days before she was interviewed. That Phillips was interviewed on June 25, 2007, while some of the other correctional officers were interviewed on June 21st is not evidence of retaliation. Phillips was on FMLA leave and was not scheduled to return to work until June 25, 2007. Furthermore, two other officers who were ultimately terminated were also interviewed on June 25, 2007.

There is also no evidence that the investigation targeted Phillips, as she contends. Eight officers were terminated as a result of the same Internal Affairs investigation, six (including Phillips) were terminated effective July 31, 2007, one was terminated effective August 1, 2007, and one was terminated effective August 3, 2007. Harmon Supp. Decl. ¶ 5. Of the eight officers terminated, only Phillips had filed a lawsuit or EEOC charge against the ADC prior to the termination. Defendant's Statement of Undisputed Facts, ¶ 33.

In sum, the court finds that Phillips has failed to satisfy her burden of establishing that her protected activity was a determining factor in her termination. The court grants ADC's motion for summary judgment on Phillips's retaliation claim.

C.      State Claims

Phillips has raised a tort of outrage claim and a claim under the Arkansas Civil Rights Act (ACRA), Ark. Code Ann. § 16-123-101 *et seq.* Phillips concedes that the tort of outrage claim should be dismissed.

Claims brought under the ACRA are to be analyzed in the same manner as Title VII claims. *Merritt v. Albemarle Corp.*, 496 F.3d 880, 883 (8th Cir. 2007); *Henderson v. Simmons Foods, Inc.,* 217 F.3d 612, 615 n. 3 (8th Cir. 2000).  *See* Ark. Code. Ann. § 16-123-105 (authorizing state courts to look for guidance to federal decisions interpreting federal Civil Rights Act in construing ACRA).  As the court has found that Phillips has failed to establish that the ADC discriminated against her or retaliated against her, her claim under the ACRA is dismissed.

### IV. CONCLUSION

Accordingly, ADC's motion for summary judgment [Doc. No. 21] is granted.

IT IS SO ORDERED this 23rd day of March, 2009.

_____
UNITED STATES DISTRICT JUDGE